STRAUGHAN *v.* BENNETT.

Opinion delivered April 24, 1922.

1. DEEDS—PRESUMPTION OF EXECUTION.—Where a mortgage contains a certificate of acknowledgment and is duly placed of record, this makes a *prima facie* case of the proper execution of the deed.

2. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— In an action to set aside a foreclosure of a mortgage, a finding by the trial court that the mortgage was signed by the mortgagor's wife was *held* not against the preponderance of the evidence.

3. MORTGAGES—PROOF OF PUBLICATION OF NOTICE OF FORECLOSURE.— Under Crawford & Moses' Dig., § 6807, providing that notice of mortgage foreclosure sales shall be published in some newspaper published in the county, evidence *held* sufficient to prove the publication of such a notice.

4. MORTGAGES—ORAL APPOINTMENT OF SUBSTITUTED TRUSTEE.—Where a mortgage provided for the substitution of a trustee for the original trustee named therein, an appointment of a substituted trustee indorsed on the mortgage record on the day of a sale conducted by him was sufficient, his appointment having been made orally prior to commencement of the foreclosure proceedings.

5. ESTOPPEL—MORTGAGOR PAYING RENT.—Where a mortgagor of land lived thereon two years after it had been sold at foreclosure sale, and paid rent to the purchasers at such sale and then abandoned the property and permitted the purchasers to take possession and make valuable improvements, and made no claim to the land for more than six years, he is estopped to assert the invalidity of the foreclosure sale.

6. ESTOPPEL—CONCLUSIVENESS AS TO PRIVIES.—Where a mortgagor was estopped to question the validity of a foreclosure sale, his grantees were likewise bound by his acts.

Appeal from Ouachita Chancery Court; *J. Y. Stevens,* Chancellor; reversed.

*Gaughan & Sifford,* for appellant.

The appointment of the substituted trustee to make the sale need not be in writing. 71 Ark. 487; 91 Ark. 395. Oral evidence to prove the appointment was admissible. 35 Ark. 47; 65 Ark. 53.

The doctrine of laches applies to the claim of appellees. 71 Ark. 209.

The appellee's bill should have been dismissed for want of tender of payment of the mortgage debt. 53 Ark. 71; 129 Ark. 275.

*Pace, Campbell & Davis,* for appellee.

The deed of trust was void because not signed by Amanda McGehee. C. & M. Dig., sec. 5542. Signature by mark must be witnessed. C. & M. Dig., sec. 9732; 70 Ark. 449. The positive and unimpeached testimony of the wife that she did not sign the deed had greater force than the certificate of the notary. 38 Ark. 278; *Crawley* v. *Neal,* 152 Ark. 232.

The foreclosure sale was void because no lawful notice thereof was given. 84 Ark. 298; C. & M. Dig. 6807. The burden rested on appellant to show publication and that the land was correctly described, etc. 19 R. C. L. pp. 598-600, secs. 413-415; 76 Miss. 613; 71 A. S. R. 536; 75 Am. Dec. 701; 178 Mass. 453; 51 Am. Dec. 95; 8 A. S. R. 661; 1 Mich. 338.

Oral testimony as to the appointment of the substituted trustee was properly excluded. Appellant saved no exception to the ruling of the court and cannot now complain. 9 Ark. 530; 127 Ark. 292; 96 Ark. 156; 123 Ark. 548; 44 Ark. 103; 78 Ark. 284. The second trustee deed was properly excluded. 106 Ark. 342. Appellees are not estopped by laches. 30 Ark. 520; 72 Ark. 267; 64 Ark. 104.

McCULLOCH, C. J. The tract of land in Ouachita County, containing 160 acres, which is the subject-matter of the present litigation, was originally owned by Beauregard McGehee, a colored man, who received a patent from the United States and who occupied the land as a home and cultivated it as a farm.

Appellees assert title to the land under a conveyance from McGehee, and appellants claim title under a mortgage or deed of trust, alleged to have been executed by McGehee and wife in the year 1910, and under a foreclosure deed pursuant to the powers contained in the said deed of trust.

A firm of merchants doing business under the name of Watts & Bro. were the holders of the deed of trust alleged to have been executed by McGehee and wife.

This is an action instituted by appellees to cancel the mortgage to Watts & Bro. and the foreclosure deed pursuant thereto. They allege that the deed was not signed by McGehee's wife, which rendered the mortgage void, as the land constituted McGehee's homestead.

The mortgage was dated April 29, 1910, and was to secure a debt in the sum of $425, evidenced by a promissory note. The names of both McGehee and his wife, Amanda, were signed to the note as well as to the mortgage, and the signatures were witnessed by a notary public, R. C. Lockett, before whom the acknowledgment appears to have been taken. The deed was immediately placed of record. P. Lynch Lee was named in the deed as trustee, and power was conferred upon the trustee to sell in default of payment of the debt. The deed also contained a provision authorizing the holders of the debt to substitute and appoint a trustee to act in the place of Lee in the event of the latter's death, disability or refusal to act.

Lee died in the year 1911, and the foreclosure was made by a substituted trustee, one Walker. The sale was made by Walker on April 7, 1914, and a deed was executed by him to the purchasers on the same day.

There was a written indorsement on the mortgage, dated April 7, 1914, appointing Walker as substituted trustee, and this writing is signed by Watts & Bro., the holders of the note.

The land was purchased at the sale by Watts & Bro. and subsequently sold to other parties, who were made defendants and are now the appellants in this appeal.

McGehee continued to reside on the place for two years after the sale and paid rent to Watts & Bro. He removed from the land in the latter part of the year 1916 or the early part of 1917, and has not resided on the land since then. He executed a quitclaim deed to A. W. D. Overton on May 11, 1920, reciting a cash consideration of ten dollars paid, and other considerations not disclosed. Overton executed conveyances covering his interest in the land to his co-appellees, and this suit was instituted by them on July 5, 1920.

Appellants, who purchased from Watts & Bro., entered into possession of the land and made valuable improvements thereon between the dates of their respective purchases and the execution of the deed by McGehee to Overton.

There are two issues of fact in the case, one of which relates to the validity of the mortgage, or deed of trust, and the other to the validity of the foreclosure.

It is conceded that the land in controversy was McGehee's homestead, and there is an issue of fact whether or not his wife signed the mortgage. If she did not sign it, the instrument was void under the statute which declares that all instruments affecting the homestead are void unless signed by the wife. Crawford & Moses' Digest, § 5542.

The other issue relates to the question whether or not notice of the foreclosure was given.

A certificate of acknowledgment was appended to the mortgage, and it was duly placed of record, and this made a *prima facie* case of the proper execution of the deed. Crawford & Moses' Digest, § 1532; *Polk* v. *Brown,* 117 Ark. 321; *Nevada County Bank* v. *Gee,* 130 Ark. 312.

The burden of proof, therefore, rested upon appellees to prove that the deed was not executed or acknowledged by McGehee's wife. The court made an express finding on this issue of fact, as recited in the decree, and found that the deed was executed and acknowledged by McGehee's wife, and that it was a valid mortgage. The

question for us to determine is whether or not this finding of the chancellor was against the preponderance of the testimony.

McGehee and his wife both testified that they did not execute this mortgage. They admitted that they had executed a mortgage to Watts & Bro. on a part of this land in the year 1900, and also that they executed another mortgage to Watts & Bro. on all of this land in the year 1903, but, as before stated, they each denied their signatures to the mortgage now in controversy.

The two mortgages which the witnesses admitted that they executed were acknowledged before an officer other than Lockett, but Beauregard McGehee in his testimony admitted that he had made an acknowledgment before Lockett of a mortgage to Watts & Bro.

Amanda McGehee testified that she could write a little and could write her name, and she stated that she always wrote her own name when signing a deed. It appears from the other deeds exhibited in evidence that her signature was in her own handwriting, but this particular deed was signed by mark. Lockett, the notary public, testified that both McGehee and his wife signed and acknowledged the mortgage. He was called to the witness stand more than once, and in his first statement he said that he was not personally acquainted with Amanda McGehee, and he also said that he had no personal recollection of taking the acknowledgment. But when called to the stand later, he explained his former statement by saying that he meant that he only knew Amanda McGehee and the other McGehee women when he saw them, but was not personally acquainted with them as he was with the men of the family, with whom he had had frequent business dealings. In the meantime, Amanda McGehee had been introduced as a witness in Lockett's presence, and when he was recalled to the stand he stated that he remembered then that she was the woman who signed and acknowledged the execution of the mortgage before him. He stated that he wrote her name and that she touched the pen, or made her mark.

With the burden of proof on appellees to show that the deed was not properly executed, and with the finding of the chancellor against appellees on this issue, we should not disturb the findings unless we conclude that it is against the preponderance of the evidence, and we think that the evidence does not preponderate against the finding of the chancellor that the deed was executed.

Counsel for appellees rely on the discussion in *Watson* v. *Billings*, 38 Ark. 278, where the relative weight of the testimony of a widow asserting dower and the justice of the peace who took the acknowledgment were discussed, but in that case the deed containing the relinquishment of dower was unrecorded, and the burden was on the other party to prove the execution of the deed. There was a finding also by the chancellor that the relinquishment of dower had not been executed. That case therefore is without any controlling force in the present case, and our conclusion is that appellees have not introduced sufficient proof to overcome the presumption arising from the certificate of the officer and the record of the deed. Counsel also rely on the recent case of *Crawley* v. *Neal*, 152 Ark. 232, but that case, too, is inapplicable for it involved the question of admissibility rather than the weight of testimony.

The court, as before stated, upheld the validity of the deed, but declared the foreclosure invalid on the ground that there was no valid appointment of the substituted trustee, for the reason that the appointment in writing was not made on a date before the sale, but after the preliminary steps towards the sale had been taken. There is therefore no finding, either express or implied, on the question whether or not the notice of foreclosure was given.

The trustee's deed contained a recital to the effect that notice was given in the manner prescribed in the deed of trust, which was by posting notices.

The statute provides that notices in conformity with mortgages, deeds of trust, etc., shall be published in

some newspaper in the county (Crawford & Moses' Digest, § 6807), and appellants adduced testimony tending to show that there had been publication made in that manner. Walker, the substituted trustee, and Mr. Watts testified on this subject, and each of them stated in his testimony that the notice was published in one of the newspapers at Camden. There was no contradiction of this testimony, but the contention of appellees is that the testimony is too vague and uncertain to base a finding upon. The newspaper was not introduced in evidence, nor was the editor introduced, nor any testimony other than the statements of Walker and Watts. The affidavit provided by statute (Crawford & Moses' Digest, § 6808) as evidence of such publication was not introduced, but that was not the exclusive method of proof. *Allen* v. *Allen,* 126 Ark. 164.

It is conceded by counsel for appellees that the testimony of Walker and Watts was competent to prove the publication of notice of sale, and it was admitted in the trial below without objection, but counsel contend that it is not of sufficient weight to justify a finding on the subject. Our opinion is, however, to the contrary, for this testimony was not contradicted, and while neither of the witnesses could state the language of the notice, they both undertook to give the substance of it, and they stated that it was a notice of the time and place of sale, with a description of the land. When the testimony of each is read as a whole, it shows that they meant to testify positively that the notice contained all of the essential elements to make a valid notice. Counsel comment upon certain language of each of the witnesses as tending to show a vagueness and uncertainty, but the testimony of each must be read as a whole, and we think that their statements, which are not contradicted, are to the effect that they remembered the substance of the notice, and that it contained all the requirements.

We are of the opinion that the evidence was sufficient, and that the sale was valid.

The court erred in holding that the substitution of the trustee had to be in writing, and erred in refusing to permit appellants to show that there was an oral appointment of the trustee before he began to take steps leading up to the foreclosure, even though the indorsement was not made until the day before the sale. It was not essential to the validity of the sale that the appointment of the trustee should be in writing, but written authority was essential in order to confer authority to make the deed. *Daniel* v. *Garner*, 71 Ark. 484.

When the deed was executed, there had been authority in writing indorsed upon the mortgage, so the deed was valid and conveyed the legal title—the equitable title having been acquired at the trustee's sale. *Daniel* v. *Garner, supra.*

Our conclusion is, therefore, that a valid legal title was acquired under the foreclosure sale and deed.

In addition to that, we think that McGehee was estopped by his own conduct from asserting title to the land, and that appellees, as his grantees, are also bound by his acts. McGehee remained on the land for two years after the foreclosure and paid rent, and then voluntarily removed from the premises and made no assertion of title or claim to the land for more than six years, when he quitclaimed it to Overton, one of the appellants. In the meantime the purchasers at the foreclosure sale and their subsequent grantees occupied the land and made valuable improvements thereon. It is true that McGehee says in one place that he did not know of the foreclosure, but it was publicly conducted, and he remained on the place, paying rent, and then abandoned the land. Counsel for appellees contend that his removal from the land merely amounted to a surrender of possession to Watts & Bro. as mortgagees, but his conduct shows more than that, and it clearly appears that he intended it as a complete abandonment of the land under the foreclosed mortgage. Under these circumstances, he is estopped to assert the invalidity of the foreclosure, for, if there were any defects or irregularities in the fore-

closure, he should not have abandoned the premises and knowingly permitted the purchasers and their subsequent grantees to enter and make valuable improvements.

Appellees rely on the case of *Wood v. Holland,* 64 Ark. 104, as holding that there was no estoppel under circumstances of this kind, but in that case the question was not concerning the invalidity of the sale, but related to the right of redemption, and the court held that a voluntary surrender of possession to the purchaser did not work an estoppel against the assertion of the right of redemption. There is a distinction between the two cases, and a very clear reason for it. Assertion of the right of redemption is not inconsistent with admission of the validity of the sale, and therefore a voluntary surrender of possession is not tantamount to a relinquishment of the right of redemption, whereas such a surrender to the purchaser under a foreclosure sale is inconsistent with the claim of invalidity of the foreclosure. This is but an additional ground why the original mortgagee and his grantees, the present appellees, should be denied the right to attack the foreclosure sale.

Therefore, on each of the grounds stated, the decree will be reversed with directions to dismiss the complaint for want of equity.