LUCIANO RUIZ et al., Respondents, *v.* CHARLES RENAULD et al., Appellants.

An absolute authority to draw is equivalent to an unconditional promise to pay a bill of exchange ; and the authority need not be phrased in the precise and formal language of a legal document.

In an action upon certain bills of exchange drawn upon defendants at New York by the firm of Van A. & Co. of Havana, and sold by the drawers to plaintiffs, the latter were allowed to prove, under objection and exception, in substance, that prior to the drawing of the bills in question, defendants had agreed with Van A. & Co. to accept their drafts at sixty days, to be covered at maturity by renewing the drafts, the whole amount of credit to be paid during the next season ; certain of these drafts, which defendants had accepted to the amount of $37,000, being about to mature, Van A. & Co. wrote to defendants, in substance, that they would be unable to settle their debt during that season, and asked to have their drafts and remittances continued as before until the next crop. The method of procedure agreed upon and practiced for renewal was for Van A. & Co., before the maturity of a draft, to draw on defendants at sixty days, sell the draft and remit the proceeds to take up the draft maturing. To this letter defendants replied, postponing an answer as to the credit requested until the return of an absent partner, adding: "In the mean time we rely upon the renewal of the $37,000." Van A. & Co. drew upon defendants for $15,000, sold the draft, and remitted the proceeds. Defendants cabled : "Why only $15,000 ; must send $22,000

first steamer." Van A. & Co. thereupon drew for the latter amount, and sold the drafts, which were the ones in suit, to plaintiff, defendants' letter having been shown to him, and he purchasing in reliance thereon. The proceeds were remitted to and received by defendants. *Held*, that the evidence was properly received ; that the letter read in the light of the surrounding circumstances was explicit, and plainly authorized the drawing of the drafts, and that defendants were liable thereon.

(Argued October 14, 1885 ; decided October 30, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, in favor of plaintiffs, entered upon an order made August 7, 1883, which overruled exceptions, which were ordered to be heard at first instance at Special Term, and directed judgment on a verdict.

This action was brought to recover the amount of five bills of exchange, drawn by the firm of F. Van Asche & Co., of Havana, upon defendants, who composed the firm of Renauld, Francois & Co. in New York, at sixty days, for the aggregate amount of $22,000, which bills defendants refused to accept or pay.

The following facts were proved on the trial under objection and exception. In June, 1879, the firms of Van Asche & Co. and Renauld, Francois & Co. entered into an agreement by which the latter firm agreed to open to the former a credit of $80,000, to be drawn at sixty days, to be covered before maturity by renewing the drafts " until the whole amount has been paid during the next season " by consignments of sugar. The contract stated that " respecting the renovation of the drafts the former are to be covered before maturity by short sight drafts."

Bills drawn upon and accepted by defendants' firm under this agreement to the amount of $37,000 were payable July 29, 1880. On July 3, 1880, Van Asche & Co. wrote to defendants, stating, in substance, that, for reasons given, they were unable to settle their accounts during " this present season," adding : " We are emboldened to expect that you will allow us to continue our drafts and remittances as we had been

doing till now, and liquidate during the next crop." Defendants answered under date of July 9, 1880, as follows: "We would like to be able to reply to you at once on this subject, but we must ask you to allow us to delay doing so for a fortnight, for we would wish to consult beforehand with our Mr. Amy, who just at present is in Colorado, whence he will not return until the 20th or 25th instant. In the mean time, we naturally rely upon the renewal of the $37,000, which fall due the 29th instant." On July 14 Van Asche & Co. drew upon defendants for $15,000, sold the draft and remitted the proceeds, with a letter of advice, dated July 17, on receipt of which defendants sent a cablegram to Van Asche & Co., as follows: "Why. only $15,000; must send $22,000 by first steamer." In reply Van Asche & Co. cabled: "$22,000 Saturday steamer." On July 22, 1880, Van Asche & Co. drew the bills in suit for the $22,000, which they sold to plaintiffs, who purchased on the faith of defendants' letter of July 9, and the proceeds were remitted to and received by defendants.

Further facts appear in the opinion.

*S. P. Nash* for appellants. The letter of July 9 was not equivalent to a promise to accept within the statute. (1 R. S. 768, § 8; *Merchants' Bk.* v. *Griswold,* 72 N. Y. 472; *Barney* v. *Worthington,* 37 id. 112; *Ulster Co. Bk.* v. *McFarlan,* 5 Hill, 432; 3 Den. 533; *Bank of Michigan* v. *Ely,* 17 Wend. 508.) If, upon all the facts, the letter would by merchants be considered as an authority to draw, the question was one for the jury. (*First Nat. Bk.* v. *Dana,* 79 N. Y. 108.) A creditor who gets paid with money raised by improper means at the expense of another with whom he is in no privity cannot be made liable *in personam,* unless he has made himself liable otherwise than by merely accepting funds paid upon a just indebtedness. There must be in the transaction either the element of agency (*Nat. Trust Co.* v. *Gleason,* 77 N. Y. 400; 78 id. 503), or the party defrauded must be able to trace the money directly to the hands of the party receiving

it, as in the case of trust funds. (*Ferris* v. *Van Vecchten*, 73 N. Y. 113.)

*Joseph A. Shoudy* for respondents. An unconditional promise by a drawee to accept a bill to be thereafter drawn is equivalent to an actual acceptance. (*Greele* v. *Parker*, 5 Wend. 417; 1 R. S. 768, § 8; 3 id. [7th ed.] 2243; *Louisana Nat. Bk.* v. *Schuchardt*, 15 Hun, 409.) An absolute authority to draw a bill is equivalent to an unconditional promise to accept it when drawn. (*Ulster Co. Bk.* v. *McFarland*, 5 Hill, 432; *Bank of Michigan* v. *Ely*, 17 Wend. 510; *Barney* v. *Worthington*, 37 N. Y. 116; *Johnson* v. *Clark*, 39 id. 216; *Merchants' Bk.* v. *Griswold*, 72 id. 472; *Merchants' Bk.* v. *Cardoza*, 3 J. & S. 166; *Gelpcke* v. *Quintell*, 74 N. Y. 599; *Germania Nat. Bk.* v. *Taak*, 31 Hun, 261.) The absence of technical promissory words is of no practical moment where the language employed is such as to raise an imperative legal obligation. (*Barney* v. *Worthington*, 37 N. Y. 116; *Michigan* v. *Ely*, 17 Wend. 510; *Ulster Co. Bk.* v. *McFarland*, 5 Hill, 432.) Defendants cannot enjoy the benefit of the transaction consummated through F. Van Asche & Co., without at the same time adopting all the instrumentalities by which it was brought about. (*Bennett* v. *Judson*, 21 N. Y. 238; *Elwell* v. *Chamberlin*, 31 id. 611; *Baker* v. *U. M. Ins. Co.*, 43 id. 288; *Dutton* v. *Willard*, 52 id. 218; *Fishkill S. Inst.* v. *Nat. Bk.*, 80 id. 170.) The agreement having been in part performed it was not within the power of the defendants to recede from it, and they should be held to its full performance. (*Johnson* v. *Clark*, 39 N. Y. 216.) The case was properly disposed of as one involving only questions of law. (*Underhill* v. *Vandervoort*, 56 N. Y. 242; *White* v. *Myles*, 73 id. 335; *First Nat. Bk.* v. *Dana*, 79 id. 108, 115, 116.)

FINCH, J. The plaintiffs' right of recovery depends upon the effect of defendants' letter of July 9, 1880, read in the light of the surrounding circumstances. What these were, the evidence establishes without dispute or controversy, so that no question of fact remained for the consideration of the jury, and

no error was committed by the trial court in treating the case as involving only a question of law. ( *Underhill* v. *Vandervoort*, 56 N. Y. 242; *White's Bank* v. *Myles*, 73 id. 335.) The letter referred to was written by the defendants in answer to one from Van Asche & Co. which stated an inability to settle their debt to the defendants during that season, and sought a delay of ultimate payment expressed in these words, viz.: "For this reason we are emboldened to expect that you will allow us to continue our drafts and remittances as we had been doing till now, and liquidate during the next crop." The defendants replied; regretting the emergency; postponing an answer to the desired extension of credit until the return of an absent partner; but since drafts for $37,000 were about to mature which the defendants had accepted, and for which resources were to be provided in advance of the partner's return and the final answer promised, the letter added: "In the mean time we naturally rely upon the renewal of the $37,000 which fell due the 29th instant." Of course that renewal contemplated a temporary continuation of credit and delay of ultimate payment to be accomplished in the manner indicated by the letter of Van Asche & Co. and by the process of "drafts and remittances" which had characterized the dealings of the parties. What that process was the evidence fully discloses, and the explanation was properly permitted to be proved.

Van Asche & Co. would draw sixty-day drafts upon the defendants and procure funds by their sale, remitting the proceeds by short drafts purchased, thus in each instance putting the defendants in funds with which to meet their acceptances; and a continued repetition of the process operating to postpone the final payment of Van Asche & Co. and carrying their debt through the agency of defendants' credit. It was to this process and this mode of renewal that Van Asche & Co. referred in asking an extension, and to the same process that defendants referred when they in substance requested the renewal of the $37,000 as a temporary arrangement in advance of a final consent or refusal to extend liquidation to the next crop. Upon this understanding of the correspondence both parties acted.

Van Asche & Co. drew upon the defendants at sixty days, and having sold drafts for $15,000, remitted that amount to defendants, who expressed surprise and cabled to Havana the inquiry " why only $15,000 ; must send $22,000 first steamer," to which Van Asche & Co. replied " $22,000 Saturday steamer." It is beyond question that the defendants perfectly understood that these remittances were the product of drafts drawn on them in the usual way, and in accordance with the request contained in their letter. Van Asche & Co. sold their draft on defendants for $22,000 to the present plaintiffs, who were shown the letter of authority, and parted with their money upon its faith. Payment of the drafts having been refused, this action was brought. It is conceded that an absolute authority to draw is equivalent to an unconditional promise to pay the draft ; (*Merchants' Bank* v. *Griswold*, 72 N. Y. 472); but the appellants' contention is that the language of the letter is not explicit, does not promise to accept and pay, and is ambiguous. Reading it in the light of its surroundings, it is explicit and unambiguous. It requests a renewal of the character and by the process which both parties understood, and plainly authorized the drafts which were made. Special promissory words were unnecessary, where the language employed sufficiently imported a legal obligation. The authority need not be phrased in the precise and formal language of a legal document. Mercantile correspondence rarely has that characteristic, and often is abbreviated and assumes what is readily understood. It is enough in the present case that the defendants' letter authorized the draft when it requested the renewal which could only be made by that process, and was expected so to be made.

No error was committed on the trial, and the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.